**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RYAN HELMS, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | **NO. 15-5500** |
| | : | |
| **MELVIN FISHBURN,** | : | |
| **Defendant** | : | |

**M E M O R A N D U M**

**STENGEL, J.** **August 19, 2016**

This is an action by the trustees of a multiemployer retirement plan for IBEW AFL-CIO Local Union No. 743 and NECA Penn-Del-Jersey Chapter Reading Division Retirement Plan (the "Plan"), brought pursuant to Section 502(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(2). The plaintiffs bring this suit against Defendant Melvin Fishburn who had been a fiduciary and party-in-interest of the Plan until June or July of 2014. Defendant Fishburn has filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, claiming that the plaintiffs have no standing to continue with this action. The plaintiffs have responded. In addition, the plaintiffs have filed a motion to strike the defendant's Offer of Judgment, and a motion to strike the defendant's motion to dismiss. The defendant has responded. For the following reasons, I will deny all three motions.

## I. BACKGROUND

The Plan is a party to an Accumulated Retirement Account Group Annuity Contract with John Hancock Life Insurance Company ("Hancock"), a covered service provider to the Plan. In February 2008, the Plan and Hancock entered into an Addendum to the contract which established the Plan Expense Reduction Account (the "Account"). The Account received expense reduction credits which amounted to about $20,000 per year. The Plan had sole responsibility for determining the eligibility and reasonableness of any third-party expenses, and also for determining how the payments would be requested and paid-out. To request a disbursement, a form is submitted which requires the signature of an authorized trustee, and directs Hancock to pay a specified amount of payment to a specified payee. No other documentation is necessary.

On July 21, 2010, Hancock received a form directing it to pay $2,180 to C.I. Consulting. The form was signed by Defendant Fishburn. Over the next few years, Hancock continued to receive forms with the same directions but with different amounts of payments requested. The total of all expenses requested and paid was $81,413. It was determined in July 2015 that C.I. Consulting was a fictitious name owned by Defendant Fishburn. The Plan had never contracted with C.I. Consulting to perform any work.

The complaint alleges that Defendant Fishburn caused the Plan to engage in transactions which he knew or should have known constituted a direct or indirect furnishing of services between the Plan and a party-in-interest in violation of ERISA. Those transactions were adverse to the interest of the Plan. Mr. Fishburn received assets

of the Plan for his own personal account. Despite repeated requests for reimbursement to the Plan, Mr. Fishburn refused to pay back the $81,413, before the filing of this suit.

**II. LEGAL STANDARD**

Challenges to subject matter jurisdiction can be made at any time. See FED.R.CIV.P. 12(h)(3). In evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), there is a crucial distinction between "12(b)(1) motions that attack the complaint on its face, and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

"A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). "Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint." Id. (citing Mortensen, 549 F.2d at 889-92 (noting the distinction between a facial attack and a "factual evaluation," which "may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed.") "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case, and here the District Court may look beyond the pleadings to ascertain the facts, do not support the asserted jurisdiction." Id. "So, for example, while diversity of citizenship

might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking." Mortensen, 549 F.2d at 891 (The trial court is free to weigh the evidence ... and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims). In sum, a facial attack "contests the sufficiency of the pleadings," In re Schering Plough Corp., 678 F.3d 235, 243 (3d Cir. 2012), "whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." Constitution Party of Pa., 757 F.3d at 358 (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)).

"In reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" Constitution Party of Pa., 757 F.3d at 358 (quoting In re Schering Plough Corp., 678 F.3d at 243). Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party. Id. "This is in marked contrast to the standard of review applicable to a factual attack, in which a court may weigh and "consider evidence outside the pleadings.'" Constitution Party of Pa., 757 F.3d at 358 (quoting Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)).

Here, the defendant attaches a document to his motion to dismiss which is not part of the complaint but calls into question the standing of the plaintiffs to continue with this case. In that document, a letter dated December 3, 2015, the Fidelity Deposit Company of Maryland ("Fidelity") informed Defendant Fishburn that it had paid $81,413 to the

plaintiffs under an insurance policy, and demanded that he reimburse it. See Document #4 at 6. Citing this evidence, the defendant argues that there is no longer subject matter jurisdiction because the fact that the Plan has been reimbursed in full does not now support the asserted jurisdiction. The defendant also attaches two separate documents entitled "Release and Assignment" which purport to release Fidelity from a claim made by the plaintiffs under an insurance policy on September 28, 2015. See Document #14 at 6-9. Because I will consider this evidence, I view this jurisdictional attack as a factual one.

## III. DISCUSSION

At the Rule 16 Conference, the defendant questioned whether the proper parties were involved in this lawsuit, claiming that Fidelity and not the plaintiffs had the standing to pursue this action. He indicated that there apparently was an assignment of rights from the plaintiffs to Fidelity but that he had not yet seen it. I ordered the plaintiffs to provide a copy of the assignment to the defendant immediately following the conference, and the plaintiffs complied. I gave the defendant two weeks to decide whether to supplement his motion to dismiss or withdraw it. The defendant decided to supplement the motion.

In the supplement to the motion to dismiss, the defendant indicated that he received one operative Assignment and Release immediately following the Rule 16 Conference. This first one sent by the plaintiffs was a post-dated document that, according to the defendant, "ostensibly clawed back damages as of yet unassessed." However, when challenged by the defendant, the plaintiffs promptly turned over the

original document to the defendant. The defendant argues that both Assignments and Releases demonstrate that the plaintiffs lack standing to pursue these claims. The original version dated November 24, 2015 indicates that the plaintiffs unconditionally sold, assigned, transferred, and set over the entire liability in the amount of $81,413 to Fidelity:

> "Received from [Fidelity] the sum of [$81,413.00], being payment in full of the liability of said company for claim filed under its Policy No. CCP 0067297 as set out in Proof of Loss dated September 28, 2015.
>
> In consideration of said payment, [Fidelity] is hereby released and discharged from said claim and [the Plan] does hereby sell, assign, transfer, and set over unto [Fidelity] the said account in the amount of [$81,413]."

See Document #14 at 7. The second version dated January 8, 2016, but received by the defendant first, amends the second sentence of the original Release and adds another qualifying sentence:

> "Received from [Fidelity] the sum of [$81,413.00], being payment in full of the liability of said company for claim filed under its Policy No. CCP 0067297 as set out in Proof of Loss dated September 28, 2015.
>
> In consideration of said payment, [Fidelity] is hereby released and discharged from said claim and [the Plan] does hereby sell, assign, transfer, and set over unto [Fidelity] ***all rights to recover from Melvin C. Fishburn the amount of [$81,413]. [The Plan] does not sell, assign, transfer, or set over to [Fidelity] any other claims, rights, remedies and/or relief that [the Plan] has or may have against Melvin C. Fishburn, including but not limited to claims for relief other than the [$81,413] sought by [the Plan] in the matter of <u>Ryan Helms, et al. v. Melvin C. Fishburn</u>, E.D. Pa. Case No. 15-5500.***

See Document #14 at 9 (emphasis added).

The plaintiffs insist that both Releases cover only the claim for the reimbursement of the amount paid to C.I. Consulting, i.e., $81,413, and not the other multiple claims for the equitable relief they seek. They argue that the original Release reflects the payment of the $81,413, and the assignment of only its claim to Fidelity to recover the $81,413 from the defendant. The plaintiffs further argue that, for purposes of clarification, they entered into the subsequent Release and Assignment with Fidelity modifying the original Release and clarifying that the Plan was only assigning the right to recover the $81,413, and not any other claims for equitable relief. I agree.

A review of the complaint shows that the plaintiffs are seeking more than the amount of money the Plan received by Fidelity under the insurance policy. They seek payment to the Plan in the amount of $81,413 *plus* costs, attorney's fees, interest, and any other legal or equitable relief as the court deemed appropriate. See Compl. ¶ 36(a), (c), and (d). Additionally, the complaint indicates that the plaintiffs want the defendant to reimburse them for the amount of any excise taxes that they might be required to pay. Id. at ¶ 36(b). In their response to the supplement to the motion to dismiss, the plaintiffs clarify that the relief they seek, aside from the payment of $81,413, is the "make-whole" remedy of restoring to the Plan the interest lost on the $81,413, and to recover costs and fees incurred by the Plan in recovering the $81,413. Lastly, although not stated in the complaint, the plaintiffs now indicate that they seek a declaratory Order from this court finding that the defendant was a "disqualified person" who participated in a prohibited transaction with respect to the plan, 26 U.S.C. § 4975(a), and is therefore responsible to

pay the five percent excise tax imposed on such prohibited transactions by Section 4975 of the Internal Revenue Code.

It is apparent that the Plan has received the bulk of the remedy it was seeking. It is just as apparent, however, that the Plan has not received all of it. In order to protect the participants in this employee benefit plan, as Congress intended, it is imperative to make the Plan whole by reimbursing the costs and attorney's fees it paid out in bringing this action, and the interest it did not receive on the money while it was gone from the Plan. Further, the Plan is seeking to be reimbursed and should be reimbursed if any excise taxes are assessed against it. The plaintiffs should be permitted to continue with this action until the Plan has been made whole for the benefit of its participants.

After careful consideration, I find that the Releases signed by the plaintiffs and Fidelity did not deprive the plaintiffs of the standing to continue with this action. Accordingly, I will deny the defendant's motion to dismiss.

The plaintiffs filed a motion to strike the defendant's Offer of Judgment and a motion to strike the defendant's motion to dismiss. Shortly after the complaint in this case was docketed, the defendant filed an Offer of Judgment, allowing a judgment to be entered against him in this action for $81,412 as reimbursement, and for payment of any excise taxes actually levied against the Plan. He also offered to pay attorney's fees and costs not to exceed $9,000. A week later, the plaintiffs filed a motion to strike the Offer of Judgment as contrary to Rule 68 of the Federal Rules of Civil Procedure,[1] and a

[1] Rule 68(a) provides: "At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the

motion to strike the defendant's motion to dismiss. The plaintiffs argue that Rule 68 provides for "service" of the offer, and calls for the "filing" of the offer only if the adverse party accepts it within ten days after such service.

Initially, I note that the plaintiffs have cited no authority for striking the Offer of Judgment or the motion to dismiss. Thus, I will construe these motions as ones having been brought pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED.R.CIV.P. 12(f). Thus, by its plain language, Rule 12(f) only reaches matter contained in a "pleading." Rule 7(a) enumerates the pleadings permitted in federal civil practice: (a) Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer. See Fed. R. Civ. P. 7(a). Because an Offer of Judgment and a motion to dismiss do not fall into any of these categories, the plain language of Rule 12(f) does not support striking the Offer or the motion to dismiss.

Even if the plaintiffs did not intend to bring these motions to strike pursuant to Rule 12(f), their motions would still fail. There is nothing in the Federal Rules of Civil Procedure or our case law which prohibits the filing of an Offer of Judgment before

---

costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment."

acceptance. To support their position, the plaintiffs cite a Memorandum Order from the Northern District of Illinois which held:

> Rule 68 is really unambiguous -- its first sentence provides only for the *service* of offers of judgment on the adverse party, while its second sentence calls for *filing* of the offer only if the adverse party accepts it within ten days after such service. By strong negative inference, that latter reference to filing if and when the offer is accepted confirms the plain meaning of Rule 68's first sentence that no filing is permitted at the time of tender.

Kason v. Amphenol Corp., 132 F.R.D. 197 (N.D. Ill. 1990) (emphasis in original). I do not agree. No language in Rule 68 can be construed to prohibit the filing of an Offer before its acceptance. On the contrary, rather than using the mandatory "shall" or "must," the drafters of the Rule employed the permissive "may." While filing the Offer when tendered is not the usual practice, I can find no prohibition against it.

The plaintiffs also argue that the primary reason for prohibiting the filing of unaccepted Rule 68 offers is to avoid influencing the triers of fact in their evaluation of the case. I agree that Rule 68(b) provides that evidence of an unaccepted Offer is not admissible except in a proceeding to determine costs. Filing a document, however, is not equivalent to the document being admissible at trial.

Because there is no legitimate reason to strike the Offer of Judgment and/or the motion to dismiss, I will deny both of the plaintiffs' motions.

An appropriate Order follows.